# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>**DUSTIN JADE WELLS,**<br><br>                    Debtor. | **Bankruptcy Case<br>No. 19-40478-JMM** |

## MEMORANDUM OF DECISION

### Introduction

This matter comes before the Court following a stipulation entered into by the debtor, Dustin Jade Wells ("Debtor") and his largest creditor, Box Canyon Dairy ("Box Canyon"). The chapter 13[1] trustee, Kathleen McCallister ("Trustee") did not join in the stipulation, and, in fact, appealed the application of the stipulation as regards the proceeds from the sale of Debtor's homestead. Both the District Court and Ninth Circuit agreed with Trustee; however, the proceeds had previously been paid over to Box Canyon pursuant to the approved stipulation. Trustee now demands repayment of the proceeds, to which Debtor objects. This memorandum decision follows. Rule 7052; 9014.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION–1

*Facts*

Debtor filed a chapter 13 bankruptcy petition in May 2019. Doc. No. 1. Following an objection, Debtor amended his schedules to value his home at $668,000 and claim a homestead exemption in the amount of "100% of the fair market value, up to any applicable statutory limit." Doc. No. 46. Trustee did not object to this amended homestead exemption. Thereafter, as part of a settlement agreement with Box Canyon, Debtor agreed, *inter alia,* to sell the home and pay Box Canyon $45,000 at closing, a portion of which was to be funded by the net proceeds generated by the sale of the home. Doc. Nos. 145 & 166. Trustee objected to both the motion to sell the home and the stipulation to the extent it would allow Debtor to use proceeds from the sale to pay Box Canyon directly. Doc. Nos. 150 & 164. Trustee's objection was based on the Idaho exemption statutes which provide that the exempt proceeds from the voluntary liquidation of a homestead must be reinvested in another homestead within a year; otherwise, the proceeds lose their exempt status. *See* Idaho Code § 55-1008. This Court overruled Trustee's objection and entered an order permitting the sale and the payment of proceeds directly to Box Canyon. Doc. Nos. 159 & 169.

Trustee appealed the entry of the Court's order permitting the sale proceeds to be paid directly to Box Canyon, which order was reversed by the district court. Doc. No. 233. Debtor appealed the matter to the Ninth Circuit Court of Appeals, which affirmed the district court. Doc. No. 238. At no time did Trustee seek a stay pending appeal. As such, while the appeal to the district court was pending, Debtor sold the home which resulted in $15,751.61 in proceeds ("the Proceeds"), and paid the Proceeds directly to

MEMORANDUM OF DECISION–2

Box Canyon, and confirmed a plan. Doc. Nos. 209 & 227. Of particular relevance here, the plan provided:

> Discharge shall not be entered upon completion of plan payments unless Box Canyon Dairy shall have received a minimum of $55,000 on Claim No. 1 paid through the Trustee. The $55,000 is separate and apart from the proceeds from the sale of the home and gifts. *If Trustee should succeed in her appeal and should the proceeds from the sale of the home be accounted through the Plan and Trustee, or actually go through her office, it shall not count toward the $55,000.*

Doc. No. 209 at Part 8.1 (emphasis added).

Following the appeal, the Court conducted a status conference at which Trustee demanded the Proceeds be returned to her for distribution to Debtor's creditors. Debtor refused, arguing the Proceeds had been paid to Box Canyon pursuant to a Court order, and thus their return was not required. The Court took the issues under advisement.

## *Analysis*

Following the disposition of the appeals, there is no question that the Proceeds were exempt under Idaho law, but that exemption has now lapsed. See Idaho Code § 55-1008; *In re Cerchione*, 398 B.R. 699, 704 (Bankr. D. Idaho 2009), *aff'd,* 414 B.R. 540 (9th Cir. BAP 2009) ("while the proceeds from the sale of a homestead are also protected from reach by creditors or a trustee, under this and similar statutes, the debtor must reinvest the sale proceeds in another exempt homestead within one year or the exemption provided by the statute will lapse."); *In re Marriott*, 427 B.R. 887, 893 (Bankr. D. Idaho 2010). As such, the Proceeds revert to non-exempt funds which are included in Debtor's bankruptcy estate. That being the case, Trustee has a right — indeed, an obligation — to

MEMORANDUM OF DECISION–3

administer that asset and distribute those funds to Debtor's creditors. The question then, is how is that accomplished given that Box Canyon now holds the Proceeds?

On this question, Debtor and Trustee have offered dramatically different answers. Because Trustee never sought a stay pending appeal, Debtor argues that he (or Box Canyon) does not have to return any of the Proceeds to Trustee as they were paid pursuant to an order of this Court. There is some merit to this argument:

> [P]ublic policy values the finality of bankruptcy judgments because debtors, creditors, and third parties are entitled to rely on a final bankruptcy court order. *See, e.g., In re Onouli–Kona Land Co.,* 846 F.2d 1170, 1172 (9th Cir. 1988) (noting the need for finality in bankruptcy); 13B Federal Practice & Procedure § 3533.2.3 (3d ed.) ("Bankruptcy appeals provide numerous examples of the need to protect third party interests arising from substantial implementation of a reorganization plan pending appeal.").

*In re Thorpe Insulation Co.*, 677 F.3d 869, 880–81 (9th Cir. 2012). Moreover,

> "Finality is essential to the success of bankruptcy reorganization plans." Seeking a stay in the bankruptcy court is especially important because "[w]hen a stay is requested, all affected parties are on notice that the plan may be subject to appellate review and have an opportunity to present evidence before the bankruptcy court of the consequences of a stay" …. If a confirmed reorganization plan is upended years after plan confirmation, the other parties to the bankruptcy may be significantly damaged.

*In re Pac. Gas & Elec. Co.,* No. 21-15447, 2022 WL 911780, at *1 (9th Cir. Mar. 29, 2022) (quoting *Cobb v. City of Stockton (In re City of Stockton)*, 909 F.3d 1256, 1263 (9th Cir. 2018)).

Debtor relies on the finality of this Court's order approving the stipulation allowing the proceeds that were subject to the homestead exemption to be paid directly to Box Canyon. In essence, Debtor contends "what's done is done." Yet, somewhat ironically, it is Debtor's own argument on appeal that is his position's undoing. Before

MEMORANDUM OF DECISION–4

the district court, Debtor contended the appeal was equitably moot, as Trustee never sought a stay pending appeal, and the home had been sold and the proceeds given to Box Canyon. The district court disagreed, holding:

> the court is persuaded that, on remand, the bankruptcy court will be able to craft a practical resolution to this matter that is in keeping with the plan provision anticipating a potentially successful appeal. Accordingly, the Court declines to find this appeal equitably moot.

Doc. No. 233. Indeed, the Ninth Circuit has held that the "'most important' factor courts must consider when determining whether an appeal is equitably moot is 'whether the bankruptcy court on remand may be able to devise an equitable remedy.'" *Thorpe Insulation,* 677 F.3d at 883. Given these authorities, this Court cannot simply accept Debtor's position that because the proceeds have been spent, there is no need to consider any other sort of remedy.

Likewise, Trustee's approach goes too far in the other direction. She similarly looks past any sort of equitable remedy and simply demands repayment of the full amount of the proceeds. This position also fails to take into account the district court's finding that the bankruptcy court "will be able to craft a practical resolution to this matter" following Trustee's successful appeal.

In short, neither Debtor's approach — to disregard the results of the appeals altogether — or Trustee's proposal — to overlook the suggested use of an equitable remedy to manage the situation — is tenable here.

There is light at the end of the tunnel, however. Because Box Canyon holds about 98% of the claims, it would have received a significant portion of the Proceeds had they

MEMORANDUM OF DECISION–5

been distributed by Trustee through the plan from the outset. That fact makes things significantly easier, as the amount in play is actually quite small. The Court calculates this amount roughly, and directs the parties to provide accurate figures, as discussed below.

| | |
|---|---:|
| Total Proceeds: | $15,751.61 |
| 2% of Proceeds: | 315.03 |
| 98% of Proceeds: | 15,436.58 |
| Trustee's fee (on 2%)[2]: | 31.50 |
| Trustee's fee (on 98%): | 1,543.66 |

Using these estimated figures, a total of $1,858.68 is necessary to place the Trustee and unsecured creditors in the position they would have been in had the Proceeds been distributed by the Trustee from the beginning. From that sum, the Trustee would distribute $315.03 to unsecured creditors other than Box Canyon, from which Trustee would deduct her $31.50 fee when such distributions were made and would retain $1,543.66 as her fee on Box Canyon's $15,436.58, representing 98% of the total Proceeds. As noted above, these figures are inexact, and the Court will leave it to Debtor, Box Canyon, and Trustee to determine the numbers with precision.

The mechanism by which the funds may get back into the Trustee's hands can be accomplished in different ways; the Court has thought of several but will leave it to the parties to agree on a course of action. First, Box Canyon could pay the entire Proceeds back to the Trustee, who could then distribute them as usual, after deducting her commission. This appears to be what Trustee seeks, although it does not seem altogether

---

[2] Per 28 U.S.C. § 586(e)(1)(B)(i), Trustee will receive a 10% commission upon distribution.

MEMORANDUM OF DECISION–6

necessary, especially in light of the district court's invitation to "craft a practical resolution" in light of the appellate decisions. Second, Box Canyon could pay back just the $1,858.68 that it received as an overpayment, and Trustee could distribute the $315.02 to other creditors and retain her commissions. Third, Debtor could personally add $1,858.68 to the Trustee's coffers. Finally, Debtor can amend the plan to increase plan payments to account for Box Canyon's overpayment. If either of these last two options are chosen, however, it would appear that Box Canyon would have received slightly more than its pro-rata share, and adjustments would have to be made to equalize payments to other creditors. The Court recognizes that Debtor's discharge is conditioned, by stipulation, upon Box Canyon receiving a total of $110,000, so the parties will have to address that additional complication. Doc. No. 166 at ¶ 8.

     Each of these options would require some accounting on the part of the Trustee, but the Court has always found her very capable in such matters. A formal amendment or modification of the confirmed plan may be necessary, although it may also be possible to accomplish the task by stipulation which the Court can approve.

/ / / / / /

MEMORANDUM OF DECISION–7

The parties shall have <u>fourteen days</u> from the date of this decision to finalize the exact numbers at issue and to inform the Court of their plan moving forward. The parties shall also submit an agreed-upon form of order for the Court's consideration. Should the parties be unable to reach an agreement, they should provide the precise numbers to the Court, which will impose a remedy.

The continued status hearing currently set for September 26, 2023 will be vacated.



DATED: August 7, 2023

JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION–8